1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Dale H. Oliver (Bar No. 155467)
2    daleoliver@quinnemanuel.com
    Jlene C. Mortimer (Bar No. 247634)
3    djlenemortimer@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    Joseph R. Saveri (Bar No. 130064)
7    jsaveri@lchb.com
    Dean M. Harvey (Bar No. 250298)
8    dharvey@lchb.com
   275 Battery Street, 29th Floor
9  San Francisco, California 94111
   Telephone:  (415) 956-1000
10 Facsimile:  (415) 956-1008

11 Attorneys for Universal Delaware, Inc. et
   al.

12                    UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15

| | |
|---|---|
| UNIVERSAL DELAWARE, INC., et al., on behalf of themselves and all others similarly situated, | CASE NO. 2:10-cv-02499-R-RZ |
| | Related to: |
| Plaintiffs, | CASE NO. 07-1078-JKG-HSP (consolidated) |
| vs. | In the United States District Court for the Eastern District of Pennsylvania |
| COMDATA NETWORK, INC., et al., | |
| Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANT CERIDIAN CORPORATION'S MOTION TO QUASH SUBPOENA DUCES TECUM SERVED UPON UCLA OFFICE OF RECORD MANAGEMENT** |
| | [Declaration of Dean M. Harvey filed concurrently herewith] |
| | Judge:  Hon. Manuel L. Real |
| | Date:   June 7, 2010 |
| | Time:   10:00 AM |
| | Place.: Courtroom A |

16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT .................................................................................... 9

I.   CERIDIAN'S MOTION IS PROCEDURALLY DEFECTIVE AND
     SHOULD BE DISMISSED ........................................................ 9

     A.   The Court Should Not Consider This Motion Because Ceridian
          Failed Enter into a Joint Stipulation with Plaintiffs Prior to Filing
          This Motion As Required By Local Rules 45-1 and 37. ....................... 9

     B.   Ceridian Has Failed to Show That It Has Standing to Bring This
          Motion. ............................................................................ 10

     C.   Ceridian Is Simultaneously Seeking Duplicative Relief In
          Another Court. .................................................................... 11

II.  CERIDIAN'S MOTION SHOULD BE DENIED BECAUSE IT HAS
     FAILED TO SHOW UCLA WILL SUFFER UNDUE BURDEN IN
     PRODUCING THE RELEVANT INFORMATION CALLED FOR
     BY THE SUBPOENA .............................................................. 12

     A.   The UCLA Subpoena Seeks Documents Relevant to Plaintiffs'
          Claims, including Plaintiffs' Damages Claims. .............................. 12

     B.   Ceridian Has Not Provided Specific and Compelling Proof That
          UCLA Will Be Unduly Burdened By the Subpoena. ......................... 19

III. CERIDIAN'S MOTION SHOULD BE DENIED BECAUSE THE
     PROTECTIVE ORDER ADEQUATELY PROTECTS ANY
     COMMERCIAL OR CONFIDENTIAL DOCUMENTS SOUGHT BY
     THE SUBPOENA .................................................................. 20

IV.  PLAINTIFFS' SUBPOENA IS NOT UNREASONABLY
     DUPLICATIVE ..................................................................... 22

     A.   That Documents May Be Available From Another Source is Not
          Grounds To Quash a Subpoena or Refuse Production. ...................... 22

     B.   UCLA Has Relevant Documents Not Already Produced By
          Comdata or Ceridian. ............................................................ 23

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*A. Farber and Partners, Inc. v. Garber,*
234 F.R.D. 186 (C.D. Cal. 2006) .......................................................................... 19

*In re Ashworth, Inc. Sec. Lit.,*
2002 WL 33009225 (S.D. Cal. May 10, 2002) ...................................................... 10

*In re Auto. Refinishing Paint Antitrust Litig.,*
2004 U.S. Dist. LEXIS 29160 (E.D. Pa. Oct. 29, 2004) ....................................... 15

*In re Bergeson,*
112 F.R.D. 692 (D. Mont. 1986) ............................................................................ 23

*Coca-Cola Bottling Co. of Shreveport, Inc. v Coca-Cola Co.,*
107 F.R.D. 288 (D. Del. 1985) ............................................................................... 22

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.,*
163 F.R.D. 329 (N.D. Cal. 1995) ........................................................................... 22

*Covey Oil Co. v. Continental Oil Co.,*
340 F.2d 993 (10th Cir. 1965) ................................................................................ 22

*G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.,*
2007 WL 119148 (D. Nev. Jan. 9, 2007) ............................................................... 10

*Gonzales v. Google, Inc.,*
234 F.R.D. 674 (N.D. Cal. 2006) ........................................................................... 12

*Goodman v. U.S.,*
369 F.2d 166 (9th Cir. 1966) .................................................................................. 19

*Green v. Baca,*
226 F.R.D. 624 (C.D. Cal. 2005) ........................................................................... 12

*Heat and Control, Inc. v. Hester Indus., Inc.,*
785 F.2d 1017 (Fed. Cir. 1986) ......................................................................... 12, 20

*JZ Buckingham Invs., LLC v. U.S.,*
78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ......................................................................... 19

*Jewish War Veterans of the U.S.A., Inc. v. Gates,*
506 F. Supp. 2d 30 (D.D.C. 2007) ......................................................................... 13

*Kingsway Fin. Serv., Inc. v. Pricewater-House-Coopers LLP,*
2008 U.S. Dist. LEXIS 77018 (S.D.N.Y Oct. 2, 2008) ........................................... 9

*McCurdy v. Wedgewood Capital Mgmt. Co., Inc.,*
1998 WL 964185 (E.D. Pa. Nov. 16, 1998) ............................................................. 9

03000.61086/3498689.3

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ........................................................ 11

*New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*,
   2000 U.S. Dist. LEXIS 531 (E.D. Cal. January 13, 2000)..................... 19

*Northrop Corp. v. McDonnell Douglas Corp.*,
   751 F.2d 395 (D.C. Cir. 1984) ............................................................. 19

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ............................................................................. 12

*Panola Land Buyers Ass'n v. Shuman*,
   762 F.2d 1550 (11th Cir. 1985)............................................................ 20

*Plant Genetic Sys., N.V. v. Northrup King Co., Inc.*,
   6 F. Supp. 2d 859 (E.D. Mo. 1998)...................................................... 23

*In re Plastics Additives Antitrust Litig.*,
   2004 WL 2743591 (E.D. Pa. Nov. 29, 2004)........................................ 16

*In re Remec, Inc. Sec. Litig.*,
   2008 WL 2282647 (S.D. Cal. May 30, 2008) ....................................... 10

*State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.*,
   2007 WL 2993840 (E.D.N.Y. 2007)..................................................... 22

*Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*,
   2008 WL 4951213 (C.D. Cal. Nov. 17, 2008)....................................... 10

*U.S. v. Martin Linen Supply Co.*,
   485 F.2d 1143 (5th Cir. 1973).............................................................. 11

*Universal Delaware, Inc., et al. v. Comdata Network, Inc., et al.*,
   Case No. 07-1078-JKG (E.D. Pa. filed Mar. 19, 2007)........................... 3

*In re Urethane Antitrust Litig.*,
   261 F.R.D. 570 (D. Kan. 2009)............................................................ 15

*White Mule Co. v. ATC Leasing Co. LLC*,
   2008 WL 2680273 (N.D. Ohio June 25, 2008)...................................... 10

## **Statutes**

Fed. R. Civ. P. 26(b)(1) ........................................................................... 12

Fed. R. Civ. P. 45(c)(3)(A)(iv) ................................................................. 12

Fed. R. Civ. P. 45(c)(3)(B)(i) ................................................................... 20

## **Central District of California Local Rules**

Local Rule 37-1 ......................................................................................... 9

Local Rule 37-2.1 ............................................................................................. 9

Local Rule 37-2.2 ............................................................................................. 9

Local Rule 37-2.4 ............................................................................................. 9

Local Rule 37-4 ................................................................................................ 9

Local Rule 45-1 ................................................................................................ 9

## **Preliminary Statement**

Plaintiffs are five independent truck stops ("Plaintiffs")—small to medium sized businesses (including one in Bakersfield, California) selling diesel and providing other services to truckers—seeking to represent a national class of thousands of similarly situated independent truck stops.  This case charges several companies, including Comdata Network, Inc. ("Comdata") and its parent, Ceridian Corporation ("Ceridian"), with anticompetitive conduct that has caused Plaintiffs and members of the class to overpay transaction fees on Comdata's proprietary trucker fleet payment cards.[1]  While Plaintiffs, were negotiating with the UCLA Office of Records Management ("UCLA") regarding the scope of the subpoena *duces tecum* Plaintiffs' served upon it ("UCLA Subpoena" or "Subpoena") as discovery in *Universal Delaware, Inc., et al. v. Comdata Network, Inc., et al.*, No. 07-1078-JKG (E.D. Pa. filed Mar. 19, 2007) ("Underlying Litigation"), Ceridian sought to block Plaintiffs' efforts by moving to quash the Subpoena.  Ceridian, on the same day, filed a Motion for a Protective Order with the U.S. District Court for the Eastern District of Pennsylvania (where the Underlying Litigation is pending), seeking the same relief.  UCLA, which had initially appeared willing to produce documents in response to the Subpoena,[2] now awaits this Court's decision.  Ceridian's Motion to Quash is an unjustified obstructionist tactic and should be denied.

The information sought by the Subpoena pertains to Plaintiffs' antitrust litigation against Ceridian, among others, for violations of the Sherman Act.  Ceridian seeks to prevent Plaintiffs from obtaining documents regarding

---

[1]  Trucking company or fleets contract with third parties to provide truck drivers with fleet payment cards ("Fleet Cards") to pay for diesel fuel and other items at truck stops across the country.

[2]  UCLA, notably, has not joined Ceridian's Motion to Quash.

1  transactional data at the center of the conspiracy allegations, communications

2  between Ceridian and defendant Comdata regarding this data, analyses and reports

3  regarding this data, information about the generation and collection of this data, and

4  details about compilation of this data into a specialized "Index" by UCLA and

5  Ceridian.

6        This information is relevant not only to Plaintiffs' claim that they paid

7  increased transaction fees on Comdata's Fleet Card in purchasing diesel fuel as a

8  result of the conspiracy between Comdata, Ceridian and other defendants, but also

9  pertinent to showing the effects of the conspiracy. Moreover, the information likely

10 bears upon Ceridian's direct participation in the Fleet Card market, something

11 Ceridian has vigorously challenged in the Underlying Litigation.

12       Ceridian also makes the unsubstantiated assertion that the UCLA

13 Subpoena will burden UCLA. Not only has Ceridian failed to provide any evidence

14 of how this Subpoena would be oppressive or burdensome to UCLA, prior to

15 Ceridian filing this Motion, UCLA had met and conferred with Plaintiffs regarding

16 their efforts to respond to it.

17       Ceridian's contention that the Subpoena should be quashed because it

18 could lead to the disclosure of confidential or commercially sensitive information is

19 also unpersuasive. Ceridian has errantly neglected to note that there is a Protective

20 Order in place in the Underlying Litigation that restricts the use and disclosure of

21 documents produced pursuant to its terms, a copy of which was served with the

22 Subpoena. With these protective measures in place, Ceridian's assertion that

23 "significant harm" may result from this Subpoena is unwarranted.

24       Ceridian's contention that third parties should not have to produce

25 documents in response to the Subpoena because defendant Comdata has already

26 produced *some* responsive documents is also without merit and irrelevant. The law

27 is clear that Plaintiffs are entitled to third-party discovery regardless of Comdata's

28 or Ceridian's production. Moreover, the UCLA Subpoena seeks documents not

1  already produced by Comdata and Ceridian to date and thus cannot be deemed
2  "duplicative."

3      Ceridian has also failed to show that it has standing to bring this motion
4  or that it has followed the Local Rules requiring that it file the necessary joint
5  stipulation after meeting and conferring regarding this discovery dispute.  For these
6  reasons, as well, Plaintiffs request that the Court deny Ceridian's Motion to Quash.

7      Lastly, Ceridian should not be able to double up judicial resources with
8  this Motion when it is seeking the *exact same relief in another Court*.  Ceridian, on
9  May 7, 2010, informed the responsible judge in the Eastern District of Pennsylvania
10 that the company expected this Court to defer to the ruling in the Eastern District—a
11 matter which has been fully briefed, heard and is awaiting decision.

12     Plaintiffs respectfully request the Court to deny Ceridian's Motion to
13 Quash.

14                    **Statement of Facts**

15     Underlying Litigation Background.  In the Underlying Litigation,
16 Plaintiffs have alleged on behalf of themselves and a proposed class of thousands of
17 similarly situated independent truck stops (collectively, "Independent Truck Stops"),
18 that defendants Comdata, Comdata's corporate parent, Ceridian, and major multi-
19 state truck stop chains (the "Major Chains") (collectively, "Defendants") have
20 engaged in a scheme involving anticompetitive agreements, exclusionary contracts,
21 and other conduct that had the effect of enhancing and abusing market power in
22 violation of Section 1 and 2 of the Sherman Act (the "Scheme").[3]

23
24  _____

25  [3]  *See* Exh. A at ¶¶ 1-9, 12-26, 158-175 [Redacted Second Consolidated
    Amended Complaint, in *Universal Delaware, Inc., et al. v. Comdata Network, Inc.,*
26  *et al.*, Case No. 07-1078-JKG (E.D. Pa. filed Mar. 19, 2007) (consolidated case)
    (Docket No. 205) ("Complaint")] to the Declaration of Dean M. Harvey ("Harvey
27  Dec.").  All exhibits to the Harvey Dec.
28

1    Trucking companies contract with third parties to provide truck drivers

2    with Fleet Cards to pay for diesel fuel and other items at truck stops across the

3    country; Ceridian, through its subsidiary Comdata, is the dominant issuer of Fleet

4    Cards.[4]  Plaintiffs contend that Comdata (with the participation of Ceridian

5    regarding certain aspects of the conduct alleged) entered into an illicit *qui pro quo*

6    with the Major Chains whereby Comdata charged the Major Chains a relatively low

7    flat fee of under $1 per transaction, while it charged the Plaintiffs a high percentage-

8    based fee of approximately 2% or more per transaction, which amounted to a 500-

9    1000% price differential between Plaintiffs' and the Major Chains' fees.[5]  In

10   exchange, the Chains agreed to enhance and support Comdata's dominance in the

11   Fleet Card market by:  (1) refusing to accept certain rival Fleet Cards; (2) agreeing

12   not to issue or promote their own rival Fleet Cards; and (3) agreeing to exclusionary

13   contractual provisions designed to limit competition in the Fleet Card market.[6]  As a

14   result, Plaintiffs allege Comdata and Ceridian maintained sufficient market power to

15   charge Plaintiffs and class members artificially inflated transaction fees without

16   losing market share and were able to shift business to its co-conspirators, the Major

17   Chains.[7]

18   UCLA Subpoena.  After consulting with representatives of the UCLA

19   Office of Legal Affairs, Plaintiffs served the UCLA Subpoena on UCLA on March

20   10, 2010.[8]  That same day, Plaintiffs also electronically served a copy of the UCLA

21

22   [4]  *See id.* at ¶¶ 2, 17-21, 44-57, 138-140.

23   [5]  *See id.* at ¶¶ 1-9, 80-86, 138-141, 145-149, 158-175.

     [6]  *See id.* at ¶¶ 2-9, 87-91, 97, 158-175.

24   [7]  *See id.* at ¶¶ 1-9, 150-178.

25   [8]  Harvey Dec. at ¶¶ 3-4; Exh. B [Correspondence from the process server to
     counsel for Plaintiffs attaching the Proof of Service Subpoena – Civil Case for the

26   UCLA Subpoena, dated March 10, 2010 ("Subpoena Proof of Service")]; Exh. D

27   [UCLA Subpoena as served on UCLA and Ceridian on March 10, 2010, including
     the attached Exhibit 1 (the Ceridian-UCLA Pulse of Commerce Index,™ ("White

28   (footnote continued)

1  Subpoena on Defendants.[9]  The UCLA Subpoena seeks documents pertaining to the

2  Ceridian-UCLA Pulse of Commerce Index ("Index").[10]  The UCLA Subpoena also

3  includes a copy of the Amended Stipulated Protective Order signed by Judge Henry

4  S. Perkin on February 20, 2008 ("Protective Order") as Exhibit 3.[11]

5          Pertinent here, the Index (also referred to as "PCI") and its associated

6  monthly reports are products of Ceridian's partnership with UCLA Anderson School

7  of Management and Charles River Associates.[12]  The Index is constructed from real-

8  time information regarding the purchase of diesel fuel supplied by Ceridian through

9  its Comdata subsidiary.[13]  Every time a diesel purchase is made with a Ceridian

10  payment card (the vast majority of these transactions use a proprietary Comdata

11  card), data regarding that transaction is "immediately available" for use in the

12  Index.[14]  Furthermore, only data regarding purchases of diesel fuel for large ("long

13  haul") trucks processed by Ceridian through its Comdata subsidiary is used to

14  construct the Index.[15]  By collecting and analyzing data regarding the transportation

15  flow of these trucks across the United States, the Index aims to be "a proxy measure

16  for an existing index of economic activity," and also "an independent measure of the

17  health of the economy."[16]

18

19  Paper")), Exhibit 2 (ESI Production Specification), Exhibit 3 (the Amended

20  Stipulated Protective Order signed by Judge Henry S. Perkins on February 20, 2008

21  ("Protective Order"))].

   [9]  Harvey Dec. at ¶ 5; Exh. C [E-mail correspondence sent on behalf counsel for

22  Plaintiffs to counsel for Ceridian attaching a copy of the Subpoena, dated March 10,

23  2010 ("Subpoena Notice to Ceridian")]; Exh. D [UCLA Subpoena].

   [10]  *See* Exh. D at RFP Nos. 1-8 [UCLA Subpoena].

24     [11]  *See* Exh. D at Protective Order [UCLA Subpoena, Exhibit 3].

25     [12]  Exh. D at White Paper, p. 2 [UCLA Subpoena, Exhibit 1].

   [13]  *See id.* at p. 2-3.

26     [14]  *See id.*

27     [15]  *See id.* at p. 8.

   [16]  *Id.* at p. 2.

28

The UCLA Subpoena seeks discovery regarding the Index specifically concerning:  (1) reports and analyses relating to the Index (Request for Production ("RFP") No. 1); (2) the identities of all persons responsible for establishing, administering, organizing, calculating, or publicizing either the Index or the transactional data (RFP No. 2); (3) the source and location of the transactional data (RFP No. 3); (4) the construction of the Index (RFP Nos. 3 and 4); (5) agreements and communications between and among Ceridian, Comdata, UCLA, Charles River Associates, and/or any other third party regarding analysis of the Index before or since its formation (RFP Nos. 5 and 6); (6) the transactional data itself and the identities of all Trucker Fleets and Truckers whose transactions are found in the transaction data and the location of those transactions (RFP No. 7); (7) Ceridian's card payment services for the transportation industry and Ceridian's database of transactional data and its ability to track and monitor this data in real time (RFP No. 8).[17]

Plaintiffs' Meet and Confer Discussions with UCLA Regarding the Subpoena.  On March 10, 2010, Plaintiffs contacted UCLA requesting a conference regarding the UCLA Subpoena.[18]  On March 18, 2010, UCLA responded stating that it was "diligently collecting" documents responsive to the Subpoena and requesting an extension of the deadlines to serve responses (to April 19, 2010) and objections (to April 7, 2010) to be able to review the information for "privileged, proprietary or other matters" before responding.[19]  Plaintiffs immediately agreed to these extension

---

[17] *See* Exh. D at RFP Nos. 1-8 [UCLA Subpoena].
[18] *See* Exh. E [Correspondence from Dean M. Harvey to Kevin S. Reed, dated March 10, 2010].
[19] Exh. F [Correspondence from Patricia M. Jasper to Mr. Harvey, dated March 18, 2010 ("Jasper March 18 Corr.")].

1  requests and asked UCLA to contact Plaintiffs to meet and confer regarding

2  production issues once UCLA had a chance to review the relevant documents.[20]

3          Two days after Ceridian filed the Motion to Quash and the Motion for

4  Protective Order regarding the UCLA Subpoena, Plaintiffs received UCLA's

5  objections to this Subpoena ("Subpoena Objections").[21]  In its Subpoena Objections,

6  UCLA states that it will not comply with the Subpoena until the Court rules on

7  Ceridian's Motion to Quash.[22]  It also, for the first time, objected to the Subpoena on

8  the basis that it may call for confidential information (irrespective the Protective

9  Order attached to the Subpoena) and to the format of the production requested,

10 despite Plaintiffs' understanding that the parties had already agreed to meet and

11 confer to resolve any questions or concerns UCLA had regarding the production.[23]

12         After receiving the Subpoena Objections, Plaintiffs contacted UCLA

13 several times requesting a conference to discuss and resolve any of its concerns, but

14 did not receive a response back for several days.[24]  On April 26, 2010, UCLA

15 contacted Plaintiffs to state that it would not produce documents until the Court has

16 ruled upon Ceridian's Motion to Quash.[25]  Regarding UCLA's concerns over the

17 production format, Plaintiffs stated that they would be flexible as to the format and

18 work with UCLA to minimize any production burdens.[26]

19

20

21 [20] *See* Harvey Dec. at ¶ 9; Exh. G [Correspondence from Mr. Harvey to Ms.
Jasper, dated March 18, 2010 ("Harvey March 18 Corr.")].

22 [21] *See* Harvey Dec. at ¶ 12; Exh. H [Third-Party the Regents of California's
23 Objections to Subpoena for Document Production, dated April 7, 2010 ("Subpoena
Objections")].

24 [22] *See* Exh. H at 3 [Subpoena Objections].

25 [23] *See id.*; Harvey Dec. at ¶9; Exh. G [Jasper March 18 Corr.].

[24] *See* Harvey Dec. at ¶ 13-15; Exh. I [Correspondence from Mr. Harvey to
26 Charles F. Robinson and Eric K. Behrens, dated April 16, 2010].

27 [25] *See* Harvey Dec. at ¶ 16.

[26] *See id.*

28

1           <u>Plaintiffs Received No Joint Stipulation From Ceridian Regarding This</u>

2    <u>Motion.</u>  Not until the day before filing the Motion to Quash did Ceridian contact

3    Plaintiffs regarding the Subpoena for the first time.[27]  At this time, Ceridian

4    requested that Plaintiffs withdraw the Subpoena.[28]  Plaintiffs did not agree to this

5    request for the reasons set forth *infra*.[29]  However, at no point before filing the

6    Motion to Quash did Ceridian mention or provide Plaintiffs with a written

7    stipulation outlining its arguments in support of its request that the UCLA Subpoena

8    be withdrawn.[30]

9           <u>Ceridian Simultaneously Filed a Motion to Quash and a Motion for</u>

10   <u>Protective Order Regarding UCLA Subpoena in Two Different Courts.</u>  On April 6,

11   2010, Ceridian filed its Motion to Quash in this Court and a Motion for Protective

12   Order Regarding Plaintiffs' Discovery Seeking Irrelevant Confidential Information

13   ("Motion for Protective Order") in the United States District Court for the Eastern

14   District of Pennsylvania (collectively, "Motions").[31]  These Motions request two

15   different courts to grant the same relief:  the withdrawal of the UCLA Subpoena.[32]

16   The proceeding in the forum court have been fully briefed, a hearing has been

17   conducted, and a decision is imminent.

18

19

20

21

---

22      [27]  Harvey Dec. at ¶ 17; Exh. J [Correspondence from Mr. Harvey to Shannon

23   McClure, dated April 8, 2010 ("April 8 Corr.")].
   [28]  *Id.*

24      [29]  *See id.*

25      [30]  *See id.*
   [31]  *See* Motion to Quash; Exh. K [Ceridian's concurrently filed Motion for

26   Protective Order in U.S. District Court for Eastern District of Pennsylvania, dated

27   April 6, 2010 ("Motion for Protective Order")].
   [32]  *See id.*

28

                -8-

PLAINTIFFS' OPPOSITION TO CERIDIAN CORP.'S MOTION TO QUASH

## Argument

I.   **CERIDIAN'S MOTION IS PROCEDURALLY DEFECTIVE AND SHOULD BE DISMISSED**

    A.   **The Court Should Not Consider This Motion Because Ceridian Failed Enter into a Joint Stipulation with Plaintiffs Prior to Filing This Motion As Required By Local Rules 45-1 and 37.**

Ceridian's contention that Local Rules 7-3 and 16-2 exempt its Motion from the conference of counsel requirements is a misreading of the Local Rules.[33] *See* Notice of Mot. at 1. To the contrary, Local Rule 45-1 is directly on point and states that Local Rule 37 applies to motions relating to discovery subpoenas served on non-parties represented by counsel, such as the UCLA Subpoena.

Given that Ceridian never discussed or sent a written stipulation outlining its reasons for requesting that Plaintiffs withdraw the UCLA Subpoena, Ceridian has not met the requirements of Local Rules 37-1, 37-2, 37-2.1, and 37-2.2.[34] Pursuant to Local Rule 37-2.4 and 37-4, the Court therefore should dismiss

---

[33] Ceridian also mistakenly contends that because Plaintiffs served Defendants with a copy of the UCLA Subpoena several hours after serving it on UCLA, they have not met the "notice" requirement under the Federal Rules. *See* Mot. at 6-7. The very case that Ceridian cites in support of its arguments, *McCurdy v. Wedgewood Capital Mgmt. Co., Inc.*, 1998 WL 964185 (E.D. Pa. Nov. 16, 1998), however, shows otherwise. In *McCurdy*, a party did not provide notice of a subpoena until two weeks after it was served and two days prior to the date set for producing documents. *Id.* at *7. Despite this tardy service, the court in *McCurdy* rejected defendant's request for relief because the defendant "suffered little, if any, actual prejudice." *Id.* at *8. Ceridian has not suffered any "actual prejudice" given that it has timely filed the Motion at issue here. *See id.; Kingsway Fin. Serv., Inc. v. Pricewater-House-Coopers LLP*, 2008 U.S. Dist. LEXIS 77018, *11-12 (S.D.N.Y Oct. 2, 2008) (holding that service to defendants seven days after service to third party did not prejudice defendants because they still were able to object to the subpoena and move to quash it before any documents were produced). Ceridian's argument is therefore moot.

[34] *See* Harvey Dec. at ¶ 17; Exh. J [April 8 Corr.].

1  Ceridian's Motion to Quash without consideration and sanction Ceridian for failing
2  to meet the requirements set forth in Local Rule 37.

3     **B.     Ceridian Has Failed to Show That It Has Standing to Bring This**
4           **Motion.**

5           Ceridian has failed to show that it has standing to bring this Motion to
6  Quash.  In fact, the very cases Ceridian cites show that under Rule 45(c)(3) of the
7  Federal Rules of Civil Procedure a party lacks standing to quash a subpoena served
8  on a non-party absent a showing of privilege. *Televisa, S.A. de C.V. v. Univision*
9  *Commc'ns, Inc.*, 2008 WL 4951213 at *1 (C.D. Cal. Nov. 17, 2008) ("[A] party may
10 not quash a subpoena served upon a non-party on any grounds other than
11 privilege.") (citations omitted); *White Mule Co. v. ATC Leasing Co. LLC*, 2008 WL
12 2680273, at *4 (N.D. Ohio June 25, 2008) (finding that defendant lacked standing to
13 move to quash subpoenas to non-parties because it presented "no privilege or special
14 interest that is adversely affected by the subpoenas"); *In re Remec, Inc. Sec. Litig.*,
15 2008 WL 2282647 at *1 (S.D. Cal. May 30, 2008) ("[A] party lacks standing under
16 [Fed. R. Civ. P.] 45(c)(3) to challenge a subpoena issued to a non-party unless the
17 party claims a personal right or privilege with respect to the documents requested in
18 the subpoena.") (citations omitted); *G.K. Las Vegas Ltd. Partnership v. Simon*
19 *Property Group, Inc.*, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007) (same);
20 *compare In re Ashworth, Inc. Sec. Lit.*, 2002 WL 33009225, at *1-2 (S.D. Cal. May
21 10, 2002) (finding defendants had standing to seek a *protective order* under Fed. R.
22 Civ. P. 26 when contesting relevance, but requiring a showing of an interest in the
23 information requested by the third-party subpoenas to move to quash them).

24         Ceridian has failed to show in its argument for standing how it has a
25 privilege or personal interest in the information requested by the UCLA Subpoena.
26 Moreover, any concerns regarding the disclosure of any confidential information
27 requested by the Subpoena would be alleviated by the Protective Order currently in
28 place in the Underlying Litigation, which is discussed more *infra* at Section III.

1    While Ceridian relies on *Moon v. SCP Pool Corp.*, 232 F.R.D. 633

2  (C.D. Cal. 2005), for the proposition that parties *generally* have standing to bring a

3  motion to quash a subpoena to a non-party, it reads this case too broadly.[35]  Ceridian

4  must still show how it has a privilege or personal interest in this data to have

5  standing to bring this Motion to Quash—which it has not done.  The Court should

6  therefore deny Ceridian's Motion for lack of standing.

### C.    Ceridian Is Simultaneously Seeking Duplicative Relief In Another Court.

9    Ceridian fails to mention that it is simultaneously seeking *the exact*

10  *same relief* in the court where the Underlying Litigation is currently pending.  The

11  same day Ceridian filed the Motion to Quash at issue here, it also filed a Motion for

12  Protective Order in the U.S. District Court for the Eastern District of Pennsylvania

13  seeking an order to require withdrawal of the UCLA Subpoena.[36]  Ceridian's efforts

14  to have two courts order relief on the same matter runs contrary to the principals of

15  judicial economy which aims to prevent duplicity in the federal system.  *See U.S. v.*

16  *Martin Linen Supply Co.*, 485 F.2d 1143, 1148 n.7 (5th Cir. 1973) ("The rationale of

17  judicial economy to prevent duplicity in the federal system has precedent in the

---

[35]  In *Moon*, the non-party failed to file timely objections to plaintiffs' subpoena, but the court found that the defendant's objections to plaintiffs' subpoena—while not permitted under the law—were timely and were thus not waived given the subpoena's overbroad nature. *Id.* at 636.  In making this finding, the court noted that while a party cannot object to a subpoena served on a non-party, it could seek a protective order or make a motion to quash—without discussing the standard further. *Id. Moon,* however, presents extenuating circumstances not present here, *i.e.* UCLA has not failed to file timely objections and Ceridian is not preserving its rights by filing the Motion to Quash.  There is no reason therefore for the Court to read the language in *Moon* broadly and apply it to the facts presented here.
[36]  *See* Motion to Quash; Exh. K [Motion for Protective Order].

1  policy underlying crossclaims, pendant and ancillary jurisdiction.") (citations

2  omitted).  The Court should deny Ceridian's Motion to Quash on this ground alone.

3  **II.   CERIDIAN'S MOTION SHOULD BE DENIED BECAUSE IT HAS**

4  **FAILED TO SHOW UCLA WILL SUFFER UNDUE BURDEN IN**

4  **PRODUCING THE RELEVANT INFORMATION CALLED FOR BY**

5  **THE SUBPOENA**

6  As the party moving to quash, Ceridian bears the burden of persuasion

7  to demonstrate that the UCLA Subpoena is unduly burdensome.  *See Green v. Baca*,

8  226 F.R.D. 624, 653 (C.D. Cal. 2005); Fed. R. Civ. P. 45(c)(3)(A)(iv).  This burden

9  is a "heavy one."  *Heat and Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017,

10  1024-25 (Fed. Cir. 1986) (noting that "the factors required to be balanced by the

11  trial court in determining the propriety of a subpoena are the relevance of the

12  discovery sought, the requesting party's need, and the potential hardship to the party

13  subject to the subpoena").  Here, Ceridian has failed to satisfy its burden.

14  **A.   The UCLA Subpoena Seeks Documents Relevant to Plaintiffs'**

15  **Claims, including Plaintiffs' Damages Claims.**

16  In evaluating whether a subpoena is unduly burdensome, one of the

17  factors weighed is the relevance of the discovery sought.  *See Gonzales v. Google,*

18  *Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  The proper scope of discovery for a

19  subpoena governed by Federal Rule of Civil Procedure 45 is set forth in Rule 26(b)

20  of the Federal Rules of Civil Procedure ("Rule 26(b)").  *Id.* at 679; *Heat and*

21  *Control*, 785 F.2d at 1023 ("[R]ule 45(b)(1) must be read in light of Rule 26(b).").

22  Relevance under Rule 26(b)(1) "has been construed broadly to encompass any

23  matter that bears on, or that reasonably could lead to other matter that could bear on,

24  any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437

25  U.S. 340, 351 (1978).  Moreover, a "court should be permissive" where it is only

26  supervising "discovery ancillary to an action in another district" and "relevance is in

27  doubt."  *Google,* 234 F.R.D. at 681-682 (giving the party issuing the subpoena the

28  "benefit of the doubt" that the information sought by the subpoena was relevant to

1  the underlying case given the broad definition of relevance); *Jewish War Veterans of*
2  *the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) ("[T]he general
3  policy favoring broad discovery is particularly applicable where . . . the court
4  making the relevance determination has jurisdiction only over the discovery dispute
5  . . . ."). Here, in contrast to Ceridian's assertions, the information the UCLA
6  Subpoena seeks directly bears on Plaintiffs' claims and damage theory in the
7  Underlying Litigation and is therefore incontrovertibly relevant.

8      1.    **Information sought by the Subpoena is relevant to Plaintiffs'**
9                   **claim that Ceridian and Comdata schemed to maintain**
                 **market share and artificially inflated transaction fees for**
10                  **Plaintiffs' diesel fuel purchases.**

11         In the Underlying Litigation, Plaintiffs allege that Comdata, with the
12 active participation of Ceridian as to certain aspects of the challenged conduct,
13 entered into an illicit *qui pro quo* with the Major Chains whereby Comdata
14 artificially inflated transaction fees to Independent Truck Stops, while keeping fees
15 to the Major Chains lower, in exchange for an agreement by the Major Chains to
16 enhance and support Comdata's dominance in the Fleet Card market.[37]  Through
17 these activities, Comdata and Ceridian maintained sufficient market power to charge
18 Plaintiffs artificially inflated transaction fees without losing market share.[38]  Critical
19 to these claims therefore is information related to the fuel transaction fees actually
20 charged, which Plaintiffs assert were "computed based on a percentage of sales to
21 Comdata . . . ."[39]  And, the Index's website and marketing materials unequivocally
22 state that "information on the purchases of diesel fuel for trucks ... made with a

---

26  [37]  *See* Exh. A at ¶¶ 1-9, 138-141, 145-149, 150-175 [Complaint].
27  [38]  *See id.*
   [39]  *Id.* at ¶ 27.

-13-

1  Ceridian payment card," the majority of which are proprietary Comdata cards, is
2  collected by Ceridian and made available for use in the Index in real time.[40]
3          Given the type of data the Index is constructed upon and the
4  intertwined relationships between Ceridian, Comdata, and UCLA depicted by the
5  Index's promotional materials and website, www.ceridianindex.com, the
6  information requested by the UCLA Subpoena is relevant to Plaintiffs' claims that
7  Ceridian and Comdata conspired to maintain market share and charge Plaintiffs
8  artificially inflated transactional fees.  For example, the UCLA Subpoena seeks
9  documents in UCLA's possession showing:

10   1) reports and analyses relating to the Index (Request for Production ("RFP")
        No. 1);
11   2) the identities of all persons responsible for establishing, administering,
        organizing, calculating, or publicizing either the Index or the transactional
12       data (RFP No. 2);
13   3) the source and location of the transactional data (RFP No. 3);
14   4) the construction of the Index (RFP Nos. 3 and 4);
     5) agreements and communications between and among Ceridian, Comdata,
15       UCLA, Charles River Associates, and/or any other third party regarding any
16       analysis of the Index before or since its formation (RFP Nos. 5 and 6);
     6) the transactional data itself and the identities of all Trucker Fleets and
17       Truckers whose transactions are found in the transaction data and the location
18       of those transactions (RFP No. 7);
19   7) Ceridian's card payment services for the transportation industry and
        Ceridian's database of transactional data and its ability to track and monitor
20       this data in real time (RFP No. 8).[41]

21

22

_____

23   [40]  *See* Exh. D at White Paper, p. 3 ("Every time a diesel fuel purchase is made
24  with a *Ceridian* payment card, the information about that transaction is immediately
     available.") (emphasis added); p. 3, n.1 ("The vast majority of transactions use a
25  proprietary Comdata card…"); p. 2 ( "These transactions are processed within a
26  fraction of a second, providing Ceridian with real data in real time") [UCLA
     Subpoena, Exhibit 1].
27   [41]  Exh. D at RFP Nos. 1-8 [UCLA Subpoena].

28

1    In asserting that "[n]othing sought by the UCLA Subpoena in any way
2    relates to the pricing established for a Comdata card transaction fee" (Mot. at 10),
3    Ceridian is blind to numerous ways in which the information requested may lead to
4    admissible evidence and the liberal policy favoring discovery in antitrust cases
5    alleging conspiracy. *See In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 574 (D.
6    Kan. 2009) (stating that it was not clear that the discovery requested by plaintiffs,
7    which lacked geographic limitations, would "have no possible bearing on plaintiffs'
8    claims that defendants participated in a conspiracy to allocate the market and fix
9    prices" in the United States and thus finding them relevant) (internal quotations
10   omitted); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS
11   29160 at *8 (E.D. Pa. Oct. 29, 2004) ("Broad discovery is permitted [in antitrust
12   cases] because direct evidence of an antitrust conspiracy is often difficult to obtain,
13   and the existence of a conspiracy frequently can be established only through
14   circumstantial evidence, such as business documents and other records.").

15       As its promotional materials indicate, the Index is constructed from
16   "information on the purchases of diesel fuel for trucks" made with Ceridian payment
17   cards.[42] This type of transactional data is on its face central to Plaintiffs' claims that
18   Ceridian, through Comdata, charged differential, anticompetitive fees to Plaintiffs as
19   a result of their Scheme with Defendants, despite Ceridian's contentions otherwise.
20   Volume of diesel sales, upon which the transaction fees are based, may relate to
21   market definition, market share and competitive alternatives.  Further, even if the
22   underlying data does not include transaction fees (which would contradict

23   _____

24   [42]  Ceridian's own website states: "Ceridian captures millions of transactions
25   from over 25,000 customers, including over the road trucking companies and
     packaged-goods distribution companies. *The sample size is vast and statistically*
26   *valid for purposes of economic analysis*."  FAQ: Ceridian-UCLA Pulse of
27   Commerce Index, http://www.ceridianindex.com/about-the-index/faq/ (emphasis
     added).
28

1    Ceridian's public assertion: "The data used in the construction of the PCI includes
2    <u>all electronically available transaction information</u>," (Exh. D at White Paper, p. 3
3    n.1 [UCLA Subpoena, Exhibit 1]) (emphasis added)), information regarding the
4    volume of fuel purchases, the locations of these purchases, and changes over time,
5    are relevant to Plaintiffs' ability to demonstrate the impact of the Scheme on the
6    proposed class and the benefits of the Scheme to the Major Chains. For example,
7    the data underlying the Index may permit Plaintiffs to determine whether the
8    Scheme resulted in increased fuel purchases at the Major Chains' truck stops and
9    decreased fuel purchases at Plaintiffs' truck stops.

10          The UCLA Subpoena also seeks documents related to this transactional
11    data and the Index itself that could well "lead to evidence that illuminates
12    defendants' motive and opportunity for the alleged conspiracy…, the breadth of the
13    conspiracy, and the manner by which defendants fraudulently concealed the
14    conspiracy " or to the discovery of "the identity and location of potential witnesses
15    and to impeach defendants' trial witnesses." *In re Plastics Additives Antitrust Litig.*,
16    2004 WL 2743591 at *14 (E.D. Pa. Nov. 29, 2004) (requiring defendants to produce
17    documents provided to foreign investigatory authorities despite defendants' claim
18    that this would impose a substantial burden on them). Of potentially crucial
19    relevance is information regarding the entities that collect, maintain, and supervise
20    the transactional data. For example, Ceridian represents that Ceridian itself collects,
21    maintains, and scrutinizes this transactional data in real time in the Index
22    promotional materials.[43] The extent of Ceridian's involvement in these transactions
23
24

---

25    [43] *See* Exh. D at White Paper, p. 2-3 [UCLA Subpoena, Exhibit 1]; FAQ:
26    Ceridian-UCLA Pulse of Commerce Index, http://www.ceridianindex.com/about-the-index/faq/ ("Through Ceridian's electronic card payment services for
27    transportation industries, Ceridian tracks and analyzes the volume of fuel being used by [trucks] on a yearly, monthly, weekly and daily basis. . . . "Ceridian captures
28    (footnote continued)

1    is therefore relevant to Plaintiffs' claims regarding Ceridian's role in Comdata's

2    business and the underlying conduct, a role that Ceridian is challenging in the

3    Underlying Litigation.

4             Likewise, analyses and communications between and among Ceridian,

5    Comdata, UCLA Anderson School of Management, Charles River Associates,

6    and/or any other third party regarding the Index are likely to include descriptions of

7    the extent and nature of Ceridian's knowledge of, and participation in, Comdata's

8    operations, the identities of individuals at Ceridian with knowledge of and

9    responsibility for Comdata's operations; analyses of potential competition to

10   Ceridian's fuel cards, and the relevant markets and Ceridian's market power in those

11   markets;[44] and procedures and techniques for using Ceridian's transactional data

12   pertinent to Plaintiffs' experts' classwide analyses of impact and damages.

13            Given that the aforementioned documents sought by the UCLA

14   Subpoena are relevant to Plaintiffs' claims and well within the scope of  discovery

15   permitted in antitrust cases, the Court should not permit Ceridian to prevent UCLA

16   from producing them.

17        **2.      The information sought by the UCLA Subpoena is relevant
                    to Plaintiffs' damages theory.**
18

19            The transactional data and related information requested by the UCLA

20   Subpoena is also relevant to Plaintiffs' request for damages "measured as the

21   overcharges Plaintiffs…paid as a result of the Defendants' anticompetitive conduct,

22

23   _____

24   millions of transactions from over 25,000 customers, including over the road
     trucking companies and packaged-goods distribution companies.").
25
     [44]  It is telling that the Index purports to be representative of the entire U.S.
26   economy by relying <u>only</u> on Ceridian's transactional data.  The Index does not
     include cash transactions or transactions with rival Fleet Card issuers.  *See* Exh. D at
27   White Paper, p. 8 [UCLA Subpoena, Exhibit 1].

28

1  trebled[.]"[45]  The amount of these increased transactional fees mandated by Ceridian

2  and charged by Comdata, which Plaintiffs allege are a percentage of the total

3  transaction values paid, will be the raw data on which Plaintiffs can calculate or

4  verify their damages and are thus uncontrovertibly relevant.[46]  Furthermore,

5  information regarding the origination, collection, cataloguing, and/or analysis of this

6  transactional data is also relevant to the value of Plaintiffs' damages.  These are just

7  a few of many examples of how this information may lead to admissible evidence

8  and is therefore relevant under the standard set forth in Rule 26(b).

9           **3.     Temporal scope of information sought by the Subpoena is
10                  relevant to Plaintiffs' "ongoing conspiracy" claim.**

11          Ceridian's assertion that the documents sought by the UCLA Subpoena

12  are "temporally remote" from Plaintiffs' allegations is without merit.  Plaintiffs'

13  alleged "Class Period" set forth in their Complaint is "from March 2003 until the

14  effects of Defendants' anticompetitive conduct cease."[47]  Moreover, Plaintiffs allege

15  that the underlying Scheme began in the late 1990s and "is continuing, [as are] are

16  the overcharges suffered by Plaintiffs as a result of the Scheme.[48]  For example, one

17  or more contracts between Comdata, Ceridian and the Major Chains containing the

18  restrictive provisions at issue have been recently renegotiated and renewed.[49]  Given

19  Plaintiffs' alleged "ongoing" time period for the Scheme and the broad scope of

20  discovery permitted in antitrust cases noted *supra*, Ceridian has also failed to show

21  that the information requested by the UCLA Subpoena is not "temporally" relevant

22

23      [45]  Exh. A at Request for Relief [Complaint].
        [46]  *See id.* at ¶¶ 27, 140-141.  Plaintiffs note that Ceridian made no mention of
24  the applicability of this data to Plaintiffs' damage calculations in its argument that
    the data sought by the UCLA Subpoena is not relevant.
25      [47]  *Id.* at ¶ 27.
        [48]  *Id.* at ¶ 156; *see* ¶ ¶ 19-21, 27.
26      [49]  *See id.* at ¶¶ 97, 108 110-114 [¶¶ 108, 110-112 have been redacted in the
27  Complaint filed herewith to avoid an under seal filing]

28

                                    -18-

1    to the Plaintiffs' claims in the Underlying Litigation. *See New Park Entm't L.L.C. v.*

2    *Elec. Factory Concerts, Inc.*, 2000 U.S. Dist. LEXIS 531 at *11 (E.D. Cal. January

3    13, 2000) (finding that conduct occurring *before* the alleged conspiracy began is

4    relevant and "defendants and third-parties cannot withhold information solely on

5    [that] basis").

**B.    Ceridian Has Not Provided Specific and Compelling Proof That
        UCLA Will Be Unduly Burdened By the Subpoena.**

8          A party claiming that production of requested documents is oppressive

9    bears the burden of proving up the objection. *Northrop Corp. v. McDonnell

10   Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's order

11   quashing subpoena). The party cannot rest on conclusory assertions. *See Goodman

12   v. U.S.*, 369 F.2d 166, 169 (9th Cir. 1966) (reversing the quashing of a subpoena

13   because of lack of specific evidence of burden). Rather, "[t]he party must provide

14   specific and compelling proof that the burden is undue." *JZ Buckingham Invs., LLC

15   v. U.S.*, 78 Fed. Cl. 15, 25 (Fed. Cl. Ct. 2007) (denying motion to quash).

16         While asserting that that the UCLA Subpoena is intended "to harass

17   Ceridian and UCLA" (Mot. at 11), Ceridian offers no evidence in support of this

18   claim.[50] There is not even a description, for example, of the volume of documents

19   involved or the time or expense it would take to gather them in order to respond to

20   the subpoenas. Courts consistently hold that the mere allegation of undue burden,

21   without evidentiary support, is insufficient to resist discovery. *See A. Farber and

22   Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or

23   boilerplate objections such as overly burdensome and harassing are improper—

24   especially when a party fails to submit any evidentiary declarations supporting such

---

26   [50]   Indeed, Ceridian's complaints about any alleged burden are irrelevant. "The
27   burden of showing that a subpoena is unreasonable and oppressive *is upon the party
     to whom it is directed.*" *Goodman*, 369 F.2d at 169 (emphasis added).

1   objections.") (internal quotations omitted).[51]  Ceridian has failed to prove any undue

2   burden to UCLA, and its objection fails for this reason alone under established law.

3          Furthermore, prior to Ceridian filing the Motion to Quash, Plaintiffs

4   had met and conferred with counsel for UCLA regarding the Subpoena.  Counsel for

5   UCLA had told Plaintiffs that UCLA was "diligently collecting" and reviewing

6   responsive information.  As soon as Ceridian filed the Motion to Quash, however,

7   UCLA reversed course and refused to produce any responsive information until this

8   Motion was resolved.[52]  Although UCLA served objections and has put responding

9   to the Subpoena on hold until the Court adjudicates this matter, Plaintiffs believe

10  that Plaintiffs and UCLA will be able to resolve UCLA's concerns over the

11  production format and the alleged confidentiality concerns regarding this

12  information through the meet and confer process.[53]

13  **III.   CERIDIAN'S MOTION SHOULD BE DENIED BECAUSE THE**
14  **PROTECTIVE ORDER ADEQUATELY PROTECTS ANY**
      **COMMERCIAL OR CONFIDENTIAL DOCUMENTS SOUGHT BY**
15  **THE SUBPOENA**

16         Ceridian's argument that the UCLA Subpoena should be quashed under

17  Federal Rule of Civil Procedure 45(c)(3)(B)(i) is equally unpersuasive.  Even if

18  Ceridian could prove that the information requested by the UCLA Subpoena is

19

20  _____

21  [51]   *See also Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th
      Cir. 1985) (conclusory recitations of expense and burdensomeness are not
22  sufficiently specific to demonstrate why requested discovery is objectionable).
      [52]   *See* Exh. F [Jasper March 18 Corr.]; Exh G [Harvey March 18 Corr.]; Harvey
23  Dec. at ¶¶9, 16; Exh. H at 3 [Subpoena Objections].
      [53]   As addressed *infra*, any confidentiality concerns regarding the disclosure of
24  the information requested by the UCLA Subpoena are put to rest by the Protective
25  Order in place in the Underlying Litigation.  *See Heat & Control*, 785 F.2d at 1025
      ("[T]he selective disclosure of protectable trade secrets is not *per se* unreasonable
26  and oppressive, when appropriate protective measures are imposed.") (internal
27  quotations omitted).

28

1 confidential, which it has not done,[54] the Protective Order applicable to and served

2 with the UCLA Subpoena alleviates any confidentiality concerns regarding the

3 responsive documents.[55]

4      Notably, however, Ceridian fails to mention this Protective Order anywhere

5 in its Motion to Quash. This omission is especially suspect as the Protective Order

6 specifically addresses the treatment of "Highly Confidential" documents that

7 contain "trade secrets, highly sensitive and non-public research and analysis ... and

8 communications regarding" these types of information.[56] The Protective Order

9 requires that these "Highly Confidential" documents only be disclosed to outside

10 counsel for the parties, outside experts and consultants, litigation support services,

11 the Court and related staff.[57]

12      Given that "there is no absolute privilege for trade secrets and similar

13 information," courts must "balance the need for the trade secrets against the claim of

14 injury resulting from the disclosure." *See Google*, 234 F.R.D. at 685. Pursuant to

15 the Protective Order, any confidential or commercially sensitive information

16 requested by the Subpoena cannot be disclosed to competitors.[58] Ceridian therefore

17 has not shown that producing the documents called for by the UCLA Subpoena will

18

19    [54] Ceridian fails to provide evidence of any non-disclosure agreement between

20 Ceridian and UCLA. *See Google*, 234 F.R.D. at 684 ("Trade secret or commercially sensitive information must be important proprietary information and the party

21 challenging the subpoena must make a strong showing that it has historically sought to maintain the confidentiality of this information.") (internal quotations omitted).

22 The record therefore suggests nothing more than an arm's-length commercial

23 relationship.

   [55] *See* Exh. D at Protective Order, p. 1 [UCLA Subpoena, Exhibit 3] ("This

24 Amended Stipulated Protective Order ... governs the use and handling of documents

25 ... produced or given by any ... individual or entity in pre-trial proceedings" in the Underlying Litigation.).

26    [56] *Id.* at Protective Order, p. 2.

27    [57] *Id.* at 4.

   [58] *See id.*

28

-21-

1  result in "significant[] harm" (Mot. at 12) to Ceridian or UCLA.  Moreover, the

2  relevance and Plaintiffs' need for this information has been established.  *See Coca-*

3  *Cola Bottling Co. of Shreveport, Inc.  v Coca-Cola Co.*, 107 F.R.D. 288, 297-298

4  (D. Del. 1985) ("As in most disputes regarding the discoverability of trade secrets . .

5  . the necessity of the discovery of the [confidential information] follows logically

6  from the determination that the [confidential information is] relevant.").

7  Accordingly, the Court should not prevent UCLA from producing this information

8  even if it is confidential because it is adequately protected by the Protective Order.

9  *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339

10  (N.D. Cal. 1995) (finding that the production a third party's commercially-sensitive

11  responsive documents would  be appropriate if they were classified as "special

12  confidential" under the protective order in place).

13  **IV.    PLAINTIFFS' SUBPOENA IS NOT UNREASONABLY**
14  **DUPLICATIVE**

15  Ceridian's argument that "*much of*" the raw data used to create the

16  Index has already been produced by Comdata (Mot. at 12 (emphasis added)) is

17  unpersuasive for two key reasons.  First, the fact that documents *may be* available

18  from other sources, including one of the parties, is not grounds to refuse production.

19  Second, the UCLA Subpoena seeks documents not already produced by Comdata or

20  Ceridian.

21  **A.    That Documents May Be Available From Another Source is Not**
22  **Grounds To Quash a Subpoena or Refuse Production.**

23  Despite Ceridian's contention otherwise, "nothing in the Federal Rules

24  of Civil Procedure requires a litigant to rely solely on discovery obtained from an

25  adversary instead of utilizing subpoenas." *State Farm Mut. Auto. Ins. Co. v.*

26  *Accurate Medical, P.C.*,  2007 WL 2993840, at *1 (E.D.N.Y. 2007).  Moreover, "a

27  person may not avoid a subpoena by saying that the evidence sought from him is

28  obtainable from another." *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 998

1    (10th Cir. 1965) (overruled on other grounds); *State Farm*, 2007 WL 2993840, at *1

2    (same); *In re Bergeson*, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions

3    that documents sought are available from others more economically "does not

4    constitute a showing of unreasonableness or oppressiveness"); *see also Plant*

5    *Genetic Sys., N.V. v. Northrup King Co., Inc.*, 6 F. Supp. 2d 859, 861-862 (E.D. Mo.

6    1998) (third party subpoena proper where information sought pertained to a central

7    issue in the underlying claim, it was not burdensome in light of plaintiff's diligent

8    efforts to obtain the information from defendant, and the nonparty had signed

9    protective order prohibiting disclosed information from being seen by plaintiffs'

10   counsel or nonparty's competitors).   Ceridian therefore cannot simply rely on its

11   contention that Comdata has already produced some of this information to try to

12   prevent UCLA from responding to the Subpoena.

13   **B.     UCLA Has Relevant Documents Not Already Produced By**
14                **Comdata or Ceridian.**

15   In its Motion, Ceridian so much as admits that *all* of documents called

16   for by the UCLA Subpoena have not already been produced by Comdata (or

17   Ceridian).   Ceridian's tell-tale phrases—"*to the extent that* the UCLA Subpoena …

18   seek[s] underlying transactional data" and "*much of* this data has underlying been

19   produced"[59]—correctly imply that there is in fact responsive transactional data that

20   Comdata (and Ceridian) have not produced to date and that the Subpoena covers a

21   broader spectrum of documents than just the transactional data.[60]   Specifically, the

22   transactional data provided by Comdata to date cuts off in April of 2009.   The

23   Index, on the other hand, is continually updated with current transactional data[61] and

24

25   _____

26   [59]   Mot. at 12 (emphasis added).
27   [60]   Ceridian also more or less concedes the relevance of this data. *See id.*
     [61]   Exh. D at White Paper, p. 3 [UCLA Subpoena, Exhibit 1].
28

1   thus documents produced by UCLA in response to the Subpoena would contain

2   more recent transactional data *not already received* by Plaintiffs.

3           Furthermore, the representations made in the Index promotional

4   materials that *Ceridian* itself collects, maintains, and scrutinizes the transactional

5   data, *not Comdata*, call into question whether the information Comdata produced in

6   response to Plaintiffs' Request for Production on December 3, 2007 would be

7   identical to the information sought from UCLA in the Subpoena. *See* Mot. at 12-13.

8   To date, Ceridian itself has produced no documents in the Underlying Litigation.[62]

9           Ceridian's assertions that this information can be obtained from another

10  source are both irrelevant and meritless.  The Court should deny Ceridian's Motion

11  to Quash this Subpoena.

12                          **Conclusion**

13          Despite Ceridian's assertions otherwise, the documents requested by the

14  Subpoena are likely to lead to admissible evidence in support of Plaintiffs' claims

15  that Ceridian, Comdata, and other defendants engaged in anti-competitive activities

16  that resulted in Comdata (with the active participation of Ceridian regarding certain

17  aspects of the conduct) charging Plaintiffs artificially inflated transaction fees for

18  their diesel fuel transactions.  Furthermore, the Subpoena seeks documents

19  pertaining to Plaintiffs' claim that Ceridian was directly involved in the Fleet Card

20  market.  The raw data requested by the Subpoena will also assist Plaintiffs' damage

21  calculations.

22

23  [62] Notably, to date Ceridian has yet to produce a single document in response to:
    (1) Plaintiffs' First Request For Production Of Documents To Defendant Ceridian

24  Corporation, served January 5, 2010; (2) Plaintiffs' Second Request For Production
    Of Documents To Defendant Ceridian Corporation, served March 4, 2010; and

25  (3) Judge Perkin's March 31, 2010 Order granting Plaintiffs' motion to compel

26  Ceridian Corporation to comply with the subpoena and produce responsive

27  electronically stored information (Dkt. No. 204, Case No. 07-1078, U.S. Dist. Ct.,
    E.D. Pa.).  Harvey Dec. at ¶ 20; Exh. L [Judge Perkin's March 31, 2010 Order].

28

1    Ceridian has provided no evidence of how exactly this Subpoena will pose an
2    undue burden on UCLA and has omitted any mention of the Protective Order in
3    place that will prevent any responsive information from being disclosed to UCLA's
4    or Ceridian's competitors.  Without any evidence or burden or competitive harm
5    resulting from this Subpoena, Ceridian resorts to trying show that the information
6    called for by the Subpoena is duplicative of information already produced by
7    Comdata.  However, Comdata has already admitted that this information is indeed
8    different and regardless the law is clear that party cannot refuse to produce
9    information on the sole basis that it is available from another source.  Ceridian also
10   suffers, in advancing its motion, from failed standing and a procedural violation of
11   Local Rules.

12   Plaintiffs therefore respectfully request that the Court deny Ceridian's Motion
13   to Quash, thereby allowing UCLA to produce documents in response.

14

15   DATED: May 14, 2010              QUINN EMANUEL URQUHART &
16                                    SULLIVAN, LLP

17

18                                    By  s/Dale H. Oliver
19                                        Dale H. Oliver
20                                        Attorneys for Universal Delaware, Inc., et
                                         al.
21
22
23
24
25
26
27
28